Good morning, Your Honors. I'd like to reserve two minutes. Do I do something with the clock? No, just keep an eye on it. Okay, great. Thank you. So we're arguing in this case that this case should be reopened and it warrants a reopening under due process of law. You need to keep your voice up. Yes, sir. Yesterday, I submitted some newspaper articles that I would like the court to take judicial notice of, and I also brought copies of them today. Mainly, it shows that Ramon Rodriguez was convicted of fraud, defrauding immigrants, and he's now serving four years in prison, and that just happened May 5, 2008. And I'm going to do a motion to reopen, but of course, we'd like a remand, and then I wouldn't have to do a motion to reopen. But I'm going to do that within the next two weeks. This case hinges on Lizette Gomez. She disputed what my client said in the motion to reopen, and her testimony shouldn't be relied upon because she was – had a relationship with Ramon Gomez – I mean, with Ramon Rodriguez, the man who was just convicted. And if you look at the administrative record – Well, if you look at the – But more importantly – Excuse me? She wrote a letter to the – basically, you filed a motion to reopen. Your client filed a declaration that she didn't tell them they needed this information, that she didn't tell them they needed to provide certain information. Correct. She says she did. Yes. There's a conflict. Exactly. Is that exactly why the board ought to reopen? In other words, what is the board doing here? It's relying on a non-sworn letter from Lizette Gomez. Is that what it did? Exactly. And the immigration judge gave them voluntary departure, and there was no bad credibility finding, so we presume that they were credible. Now, the Board of Immigration Appeals decides they're not and gives a lot of weight to Lizette Gomez. Now, if you will look at the administrative record, page 509, you will see that Ramon Rodriguez prepared their I-589. And then if you look at the administrative record, page 501, you will see that Ramon Rodriguez filed the cancellation application for Lizette Gomez. There was a relationship between the two. But then you jump ahead – We don't know what – as Judge Berzon said, you can't – we don't know what that relationship is. I don't know. But then you jump ahead and look at her record or her letter when she's disputing the client's testimony, and she's saying, I warned them about this notario. Like she didn't know anything about him. He was evidently working for her because he filed the E-42 for her. You know, I suggest we get off of Rodriguez and on to the case that was before us. Okay, Your Honor. Lizette Gomez prejudiced the case in four ways. She withdrew the political asylum application without ever discussing it with them, and they may have had a claim. She failed to tell them to get a psychological report. That's her word against his, theirs. She failed to have the legal permanent resident parents testify or have a declaration. And she was not familiar with the documentation in the file. She was not familiar with the documentation in the file because Ramon Rodriguez provided it. And it shows on administrative record that she did not know that they came in on one visa for the whole family, and it was on one passport. And if you look at administrative record, page 283, you can see that she's not familiar with the visa. Also, she was not familiar with Salvador Perez. He had three operations in Mexico. She thought those three operations were in the United States. And she said, why didn't you get the operations in Mexico? And he said, what? And she said, where did you get the operations? And he says, in Mexico. That's on page 283. She submitted the wrong documents, page 272. And she also did not tell the clients to bring their passport to the hearing. That's on page 276. Did all of that make any difference? The issue is whether there's hardship to the citizen's children. Right. So she should have had the parents testify because they had two U.S. citizen parents and two legal permanent resident parents. And that brings up the hardship more greatly. And Geniniva, the woman, was supporting her, helping support her parents. And by getting deported, she couldn't support them. The father at the time of the hearing was in Mexico. Right. Living with the other daughter that lived in Mexico. And Geniniva was sending money. She was one of four daughters that were sending money. So it would have impacted on her. Yeah. Apparently the father had cancer and was getting cancer treatment in Mexico. Correct. That's correct. And she was sending money. And the mother was here. And she was helping support the mother. So at least declarations about the parents' hardship should have been submitted. Now, the application didn't identify the parents as a basis for hardship. Is that correct? Yeah. And the application was submitted by Ramon Rodriguez. And Lizette Gomez never looked at it. And at the hearing, nobody suggested that the parents were the basis for the hardship. That's correct. So that's a glaring deficit, something that's glaring. How much? To me, the issue still comes down to, could the BIA, I mean, you have something fairly unusual here, a very detailed letter from the lawyer with dates and times and places about what she asked them to do and what they did and so on. And the question is, is the BIA entitled, it's not sworn, though, but it is certainly detailed, rely on that at this stage to determine essentially in a conflict of the evidence who was right or did it have to do something else? I mean, that seems to me to be the only issue. Did it have to have a – did it have to reopen the case and send it to an IJ for a hearing on who – on whether the lawyer or the clients were telling the truth about what happened or could they just resolve it now? That seems to me to be the question. Do you have any case law on that question? Due process? No, I don't have any case law on that particular question. If they're disputing who to believe, that's what you're saying. Okay. But that's the only question, isn't it? Because if you believed her, they lose, don't they? I think the record shows that she wasn't prepared and that she provided a certain amount of cases. She agrees she wasn't prepared, but she says it's because they didn't give her the information that she asked for repeatedly one time over and over and over again and very specifically. That's what she says. She's either right or she isn't right. She's not right. Well, we don't know that. What's the standard for us to review the Board of Immigration Appeals as to their determination of facts? They are – the Board of Immigration Appeals is making a credibility finding. They're deciding that our client – my clients are not credible and they're putting all the weight on the previous attorney. And that's just not fair. Do we give any reference to their finding of fact? Yes, it would because if – Or do we defer to what they found as fact? It seems like the Board found that Lizette Gomez was telling the truth, that that was a fact. And that's not – it's a disputed fact. That's a disputed fact, but we're now reviewing what the lower agency did. And my question is, do we have to give some deference to their finding? I don't think so. I don't think they have the right to make a credibility finding when the lower – when the immigration judge found them credible and they are sui sponte deciding that it's not credible. Well, on a motion to – I think we have some case law on a motion to reopen that the BIA is not to make credibility determinations. Right. That's what I'm referring to. Right. And they are, in effect, doing that. They're to presume that the information or the declaration provided by the petitioners is correct. Right. Unless it's inherently unbelievable. And I guess that's where the problem with the detailed letter comes in because one could conceivably look at that letter and say, well, her, you know, her. If you take her – if you take the lawyer's letter, then maybe this is all unbelievable. But the credibility that the IJ found didn't pertain to what the issue is before us now. Exactly. So that didn't have anything to do with it. So what we're doing is reviewing what the BIA, Board of Immigration Appeals, determined with regard to the factual dispute between the attorney and what the petitioners say. And they gave too much weight to the attorney and not enough weight to the respondent. In your view. Well, the immigration judge found that they were – she didn't make credibility findings. So in other words, they were credible. And these – No, no. That determination that was made by the immigration judge with regard to something entirely different. That's true. So this one – You're presuming that the clients are not credible. No. Because, well, the Board of Immigration – the Board of Immigration – Wait a minute. Hold it. What I'm saying is that the Board of Immigration Appeals made a factual decision and now we have to determine whether that was correct or not and do we give any deference to what they found. And you say no. Right. I think it should be remanded and so it can be discussed in front of an immigration judge. Right. It warrants a remand. Okay. Thank you. I don't have any time left. I'll give you one minute for remand. Friday. Thank you. On a motion to reopen, wasn't the Board of Immigration's appeal to review the – and accept what the petitioner said in order to reopen? Now, that would not be the case if they're holding a hearing. Then their factual determination is right. But just in order to allow them to reopen, don't they have to give the credibility factor to the petitioner? Thank you, Your Honor. I'll introduce myself and then answer your question directly. Good morning, Your Honors. Judge Paez, Judge Berzon, Judge Huggis, nice to see you all again. I'm John Cunningham from the Department of Justice appearing on behalf of the Attorney General. May it please the Court. Our bottom line, very quickly, is that the petition for review in docket number 0474794 should be dismissed for lack of jurisdiction and that the petition for review in docket number 0570426 should be denied. This is an unusual case. And ordinarily – and, Judge Paez, your question about how much weight and credibility is to be accorded in support of a declaration submitted in support of a motion to reopen, I think ties into Judge Hugg's question. The Board's order that I think the Court is most interested in is reviewed for abuse of discretion. It's true that a declaration submitted in support of a motion to reopen is to be accorded presumed credibility, unless it's inherently unbelievable. The Court's case law says that. Here we have a letter, unsworn, but a letter written by Ms. Gomez, the former lawyer, that does directly contradict Petitioner's essential claims, which was that Ms. Gomez never told them that they needed to go out and get their elder son examined by a counselor, a psychologist, or a psychiatrist. And the Board – Do you have any idea why she's a former lawyer? Oh, their former lawyer. Ms. Gomez, that's right. And the Board looked at the two pieces of evidence before it and said, we don't think this warrants reopening. They were acting within their discretion when they made that determination. Well, why? I mean, first of all, does the Board get to make fact findings at all? I mean, if there was to be a fact finding made, wouldn't it be made by an IJ and not by the Board? Well, this kind of thing does come up in, for example, Your Honor, in in absentia cases. The Court's case law in that area has gradually moved away from requiring sworn statements from aliens claiming that they weren't told by their former lawyer that they had to be at the hearing at a particular time. The Court has said, essentially, we will look at what the alien has provided, and if it's reasonably credible, we'll think that's enough to overcome the presumption that, for example, the notice of hearing was mailed properly. If the alien says, well, I never got it. You know, I'm having a hard time hearing your voice. I'm sorry. No, but I'm asking a different question. I'm asking two related questions. Right. One is, who decides? And the second is, what can you decide on paper when the paper is directly conflicting and one is sworn and the other isn't? But the first question is, who decides, the IJ or the BIA when there's conflicting evidence? I think in this case, Your Honor, the BIA, the BIA didn't say we are we believe Ms. Gomez and we disbelieve the petitions. They had to be. They had to be doing that. Well, they have to decide whether reopening is warranted. Right. In order to do that. The only way they could have done that in this do you have any doubt that if Ms. Gomez's letter wasn't there, they would have their view would have been different? No. Why? Because. No, you have no doubt. No, I have no doubt. Yeah, I think that I think that probably the board would have granted reopening if it was just the petitioner's declaration. So therefore, they had to be making a fact-finding as between the two of them as to who was telling the truth. They had to be doing that. Well, Your Honor's question, I mean, if somebody asked, I think it was you, Your Honor, is there, or maybe it was you, Judge Pius, is there case law on this? I'm not aware of a case from this circuit or any other circuit that says in this situation, in this particular kind of situation, the board must remand down, send the case down to an immigration judge for further hearings on whether reopening is warranted based on a conflict in testimony. The board. Oh, no. It seems to me what you do under these circumstances is you, well, it is a little complicated. I was going to say you reopen it at least to the point of finding out whether or not yeah, I suppose that's what you do. You reopen it and then you have a hearing and a determination of whether there was, in fact, an effective assistance. So then the outcome is that the alien wins. Reopening is granted. Well, but he still has to prove the ineffectiveness. Well, I suppose the board could do that, Your Honor. I don't know that it's required to, though. I mean, given the fact, we must remember that motions to reopen are disfavored, and we must also remember that there is a presumption in the law that former counsel's performance was effective. So given those presumptions that always operate against a motion to reopen based on claimed ineffectiveness, was the board required. But isn't a motion to reopen a motion to basically withdraw the order and find some relevant facts? I guess what I'm trying to say is they essentially did reopen and then make the facts and then decide the facts, but they didn't do it right because ordinarily if you were going to decide facts, you wouldn't do it on a bare record without the opportunity to cross-examine anybody and by the board, not the IJ. I mean, essentially they did reopen. It's hard for me to imagine. I'm sorry, Your Honor, I lost you on that last point. They did reopen. Essentially they did reopen. I'm sorry. Well, they found facts rather than – and once you do that, it seems to me that you are reopening the record and finding facts. That's what they did. But if the reopening, if there was a hearing before the immigration judge and there was – the result was the same. I mean, it's very hard to imagine.  I know that immigration hearings are a little weird because usually there isn't conflicting testimony. But in every other realm of life, that's what fact-finders do. They hear people who say one says one thing, the other says the other thing, and they decide who's telling the truth. That's what they do. And they usually do it in person and with an opportunity to cross-examine, not on paper. Yes. Well, it's just so I understand. I think you said earlier that if the board were to consider only the petitioners before them, they would have granted it because the boys' health problems were serious. They weren't frivolous. They were serious problems. And there was no additional evidence other than the testimony of the petitioners about the boys. And that's the reason why the immigration judge said, you know, there's no backup. That's right. That's right. So that, as I understood you to say, that on that record only that they would have to reopen. Yes. Okay. I've probably gotten myself in trouble. Not necessarily reopen meaning grant the removal, but reopen meaning have a hearing where they could introduce new evidence. That's correct. That's correct. Now, what we're talking about here is a sort of intermediate reopening where there would be a sort of special master fact-finding limited to who was telling the truth about what Ms. Gomez told the petitioners. Did she tell them to go out and get that child examined by a psychologist and do it as soon as possible, or did she not? Who makes that fact-finding? It would be, well, under the scenario that Judge Berzon is interested in, it would be an immigration judge. Yeah. So it would have to be referred back to the immigration judge to make the finding. Does it make any difference that one of these statements is sworn and the other one's not? I think, well, again, Your Honor, I've pointed out that in failure to appear cases, the court has sort of moved away from requiring aliens to submit a sworn declaration. But here we have conflicting evidence. Right. One of them is sworn and one of them isn't. My life would be easier if Ms. Gomez had submitted a sworn declaration. But the letter is detailed, first of all, very detailed. And second, she's given you documentary backup. She's given you records of the meetings that she had with the petitioners at various points before the hearing went forward. I think it's on pages 35 and 36, or 36 and 37 of the record, where she has notes in there given at the time that she had her conferences with the petitioners saying, you need to go out and get this child examined. And then the last one, the February 2003 note says, meeting very difficult. They still have not gotten child examined. That gives her letter quite a bit more believability. She's given you contemporaneous records. So the immigration judge would consider that and make the finding a fact. According to the BIA, it has the ring of truth. That's correct, Your Honor. That's correct. I think that's a fair statement. And it probably does. But the question is, is this a procedurally proper way to proceed? It's a shortcut. And the question is, is it a legitimate shortcut? I think that's a fair statement, Your Honor. Was this a legitimate way for the board to, in effect, look at the record before it and say, reopening, warranted, or reopening not? And I think that the board did not act improperly or exceed its authority. What is the time sequence here in terms of how these things came in? Did the parents' units have an opportunity to reply to the letter from the lawyer? The actually, Your Honor, the petitioners submitted that letter themselves. It was a supplemental filing. And when they did that. So their statement, their declaration is, in effect, a reply to it? No, Your Honor. Their declaration came first. I'm sorry. Their declaration came first. It was one of the exhibits attached to the motion to reopen. Subsequently, the petitioners made a supplemental filing while the motion to reopen was still pending before the board. And they simply submitted Judge Ms. Gomez's letter. Gomez had submitted that letter to the State Bar. Yes. And sent a copy to the petitioners. Petitioners. And then petitioners. They then sent it on to the BIA. That's what I understood. Quite right, Your Honor. Quite right. And I suppose my point here is that when petitioners did that, they didn't say, we want an opportunity to cross-examine her. We want to put her on the stand. This is directly contradictory to what we're saying, and we need to straighten this out before effect. Well, I could have thought quite sensibly that the standard is whether they've made a prima facie case with their sworn declaration and that they didn't have any need at this point to counter it because they would have an opportunity to do so at a hearing. I mean, that would be the ordinary course of events. That is the ordinary course of events, Your Honor, because ordinarily you don't have this kind of response from the court. But ordinarily, if you put in a sworn declaration, it's sort of like a summary judgment. It seems to me it's like a summary judgment standard. You could not grade summary judgment on this record, right? That's correct. All right. So the question is, why can you grant ñ why can the board make a decision on this record? When a court couldn't, you'd have to have a hearing, an evidentiary hearing. Because I think, Your Honor, summary judgment on the merits is quite a bit different from saying we are going to start this case all over again and grant reopening. And that's what the board was asking to do. A granting reopening, my understanding is, and maybe you can tell me why I'm wrong, that granting reopening means we are going to let you put on some facts. That's all it means. It doesn't mean you win. And it doesn't mean anything other than we're now ñ we have reason to doubt the decision we made before. So we're going to look into it and start over again in that sense. But it doesn't mean ñ as I understand it, they don't necessarily get to put their additional information in. They first have to prove their IAC, but they have to prove it in a factually appropriate way. Yes. I was with you for most of that, Your Honor, and I lost you at the very end. Ordinarily, sure. We have to prove it in the way that we make fact decisions, which is evident in the immigration court, which is before an I.J., with a hearing, with the opportunity to have live testimony, and with the opportunity to cross-examine witnesses. Right. And certainly in an ordinary case, and we'll get back to the ñ I'll get back to the hypothetical situation where Ms. Gomez's letter was not before the board and the board did grant reopening. Then, yes, there'd be a further hearing before the immigration judge. And Mr. Gomez could have showed up and Ms. Gomez could have said exactly what her letter said. Well, that's a different kind of reopening. We're ñ I thought you were talking about the ordinary course of reopenings. This kind of reopening I've never heard of. This kind of case where a sort of limited reopening based only on the IAC would take place, and then we'd have another ñ another petition for review if the ñ if the board and the immigration judge came out the way they did here or the way the board came out here. So we'd have a record. Probably would. Oh, we'd have a record. The question would still be the same. Did the board abuse ñ But on the other hand, if the ñ if the I.J. thought ñ I mean, you could do it all at once. If the I.J. thought that there was an IAC, then you'd go ahead to the merits. And then my objection would be the same one I voiced five minutes ago, Your Honor, which is that the alien has won, because he's ñ she's got ñ they've gotten ñ Right. Hearing you, but maybe ñ I'm sorry. My objection would be the same one I voiced five minutes ago. But it wouldn't win, because if the I.J. concluded that there was an IAC, he just wouldn't look at all the rest of the information. Well, all right. Yes. In that situation. But then we have a ñ then we have a very limited appeal to the board and a very limited petition for review before the court. The same one we have here, in effect, Your Honor. Correct. But with a record. Well, I think the board had a record before. And I think the board acted properly on the basis of that record. My time is ñ Judge Huck has a question. One thing that strikes me as odd, that you would find against the petitioners, because they did the ethical thing of providing this additional letter that they didn't have to do, that the attorney had written. They weren't obligated to do that, were they? No, they were not. But the basis for your refusing them to ñ their petition to reopen is because they provided this letter in full openness to the BIA. That's correct, Your Honor. I mean, there's ñ I don't ñ I suppose petitioners should be ñ Does that make you feel kind of bad? I don't think ñ I don't think the board would be legally required to say that because the petitioners did the right thing here, we're not going to look at that information. Yeah, okay. I thank the Court for its attention. Thank you. As I said, you get a minute for rebuttal. Thank you. So the name of the case that I was referring to was Compost-Sanchez v. INS, which says the BIA must provide petitioner with a reasonable opportunity to offer an explanation for any perceived ñ That's not going to help you. You had the opportunity. I mean, you had the letter. You produced the letter. You could have also produced another declaration saying this isn't so. Yeah, I didn't ñ we didn't do that. That's true. And you were concerned about the ñ I just thought it was ñ I shouldn't do that. I don't know. I didn't think about doing that. I apologize. So we should have ñ You thought about sending it on to ñ Excuse me? Did you send it on to the BIA or did she ñ Yes. No. I noticed that she had sent it on that letter. To the bar. To CC directly to the board. Oh, to the board. Let me see. Well, then ñ well, I'm not sure. If she indicated that she sent it to the board, then we might not have. If she ñ but I know she sent it to the State Bar. Well, it does matter. I mean, I really would like to know whether you had that letter or didn't have that letter. But you had it in any event, right? Yes. Yes. You had it in any event. Whether you produced it or didn't produce it, you had it. Right. So you could have answered it. Her letter, at the bottom of her letter, it says CC, Rhoda Wilkinson Domingo. That's you, correct? Right. Yes. And Board of Immigration Appeals. Okay. So she sent it, possibly. I'm not sure if we sent it. The board should take judicial notice of the new facts in this case and remand the case. It warrants a remand. Their own attorney violated the due process of law for these people. Okay. Thank you. Thank you. Thank you. Perez Menece will be submitted on this time. And we'll turn next to Perez Mendez v. Mukasey. Thank you.
judges: Hug, Paez, Berzon